an organized body the authority to provide for the publication of the laws, and places it in the heads of the individuals belonging to the dominant political parties, and leaves it for them to determine what paper "fairly" represents the "political party to which they respectively belong, regard being had to the advocacy by such papers of the principles of its party and the support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county," etc. This obviously provides a very elastic standard. What might seem to be a very fair representation of the Republican party to one Republican might appear to be a most unfair understanding of its principles and policies to another, depending upon the factional bias; and an independent newspaper might, under certain circumstances, fairly represent the Republican conceptions of a majority of the party members of the board of supervisors, though varying materially from the conceptions held by the editor of a rival newspaper; and, in the absence of fraud, we are of the opinion that it is not the province of this court to undertake to determine what are the principles of the Republican party, or which of two rival claimants for the patronage has most nearly expressed those principles at any particular time.

[14] This is a fact to be determined by each individual supervisor for himself, acting in good faith; and while there is no doubt that this court might compel the members to act, we think there is no authority in law to compel them to designate a particular newspaper. They have already acted, and have discharged the functions conferred upon them by law, and until that action has been nullified by some judicial action we are of the opinion that they cannot be compelled to act again, and that the court at Special Term properly dismissed the petition.

[15] It is not the province of a peremptory writ of mandamus to adjust controverted questions of law and fact (Matter of McNeile, 107 App. Div. 338, 340, 95 N. Y. Supp. 146); and, in the absence of a clear legal right, the courts should refuse, in the exercise of a sound discretion, to interfere with the action of tribunals intrusted with administrative powers.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur; KELLOGG, J., in result.

---

FUTORANSKY v. NASSAU ELECTRIC R. CO. (No. 7712).

(Supreme Court, Appellate Division, First Department. November 12, 1915.)

1. CARRIERS ⬅=348—STREET RAILWAY—PASSENGER ON PLATFORM—SUDDEN JERK—INSTRUCTION.

· In an action by a passenger against a street railway company for an injury from a sudden jerk, received while plaintiff was standing on the platform in anticipation of a stop at his station, a charge to the jury that, while the platform is usually not a safe place to ride, it exists for the purpose of entering and leaving the car; that upon the train slowing down, as though to stop at plaintiff's station, plaintiff was not necessarily negli-

⬅=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gent in going out onto the platform; that the jury were to determine whether plaintiff was negligent in being on the platform at the time, and if he was, or was injured by an ordinary jerk, there was no liability; but if he was not negligent, and was injured by a jerk so violent as to satisfy the jury of negligence, the defendant was liable—was good.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1405; Dec. Dig. ☞348.]

2. TRIAL ☞312—CHARGE TO JURY—RECHARGE BEFORE VERDICT.

Where the jury has retired and is considering its verdict, it is still within the control of the court, and, if counsel for both parties are present, may be recharged to correct any error in the charge as given or refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 744, 745; Dec. Dig. ☞312.]

3. TRIAL ☞312—INSTRUCTION—JURY—RECHARGE AFTER RETIREMENT.

Where, in an action against a street railway company for personal injuries by a passenger, the jury after retirement sent a communication to the court asking instruction on an issue not in the case, defendant was entitled to have the jury recalled and properly charged, since otherwise there might be a verdict against defendant upon such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 744, 745; Dec. Dig. ☞312.]

Ingraham, P. J., and Scott, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Charles Futoransky, by guardian ad litem, against the Nassau Electric Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

D. A. Marsh and George D. Yeomans, both of Brooklyn, for appellant.

Martin T. Manton, of Brooklyn, for respondent.

CLARKE, J. [1] Plaintiff was a passenger on an elevated train of the defendant railroad corporation. He boarded it at Sixteenth street and Fifth avenue in the borough of Brooklyn. On New Utrecht avenue, at the place where the accident occurred, the tracks had left the elevated structure and were located on an embankment two or three feet above the surface of the avenue. The plaintiff and a friend had taken seats in the last car. The train stopped at Sixty-Ninth street, and they asked a passenger what station it was, and were told. The train started up fast from that station, and when it reached the neighborhood of Seventy-First or Seventy-Second street it slowed down, and the plaintiff and his friend, assuming that it was about to stop at its station, got up from their seats and went out on the platform; the plaintiff being ahead. Just after he reached the platform the train gave a sudden jerk of a violent character, and he was thrown off, down the embankment, to the street. His friend was thrown forward, and, as he said, "by luck I happened to hold the gate." The emergency brake was pulled, the train was stopped, and plaintiff was picked up, unconscious, and taken to the hospital. Another passenger on the train in a different car testified to the sudden jolt, which threw

him violently against the window where he was sitting, and then threw him over the other way. The court very carefully charged the jury. It said:

"We all know the platform is not a safe place to ride on. We know that it is not entirely stationary, that there is a jolt, and that ordinarily we all consider it an unsafe place to ride on a car. (But the platform is there for a purpose. It is for getting out and getting into the train, and people have a right to use it for that purpose. The plaintiff claims that after they found they had left Sixty-Ninth street they wanted to be on hand to get out. The train was going slower, gradually slowing up a little, and he claims that he walked out on the platform, and just as he got out there, putting his hand on the rail, there came a sudden jerk, which threw him off into the street. He claims that was the act which caused the injury, the giving of a sudden jerk. Of course, he recognizes, and everybody must recognize, that a car, when it is going slowly, has a right to go faster, and, perhaps, as it increases its speed there may be some movement; but he claims this was an extraordinary and unusual act. It was too quick. Of course, if a company, in running its cars, makes an unnecessary and unusual jerk, which injures passengers, and it is a negligent act, they are responsible for it. But if a passenger is injured by the ordinary motion of the cars in its ordinary conduct of travel, then the company is not liable. The company claims that there was no unusual jolt here at all. * * * Did this plaintiff receive his injury because of his own careless or imprudent act? What business had he to go out on the platform at that time? Did he feel that they were liable not to call him, and that he might lose his station, and was he getting out there solely for that purpose, or did he get out there negligently and carelessly, without any particular reason? And was it a careless and negligent act, and an improper place for him to be? If you so find, he cannot recover. If, on the contrary, you find that he was properly there, and that while it was a dangerous place to be on a platform, if you find the circumstances were such as excused or permitted him to be there in the act of an ordinary careful man, then you may say that he was not to blame so much for being there, and then you may say: Was there such an unusual jolt there that you are satisfied it was created by some negligent act of the defendant?"

It seems to me a question of fact was presented, which was properly left to the jury.

[2] There was an incident which the appellant urges requires reversal and a new trial. After the court had adjourned for the day, the jury having been directed to bring in a sealed verdict, a communication was sent by the jury to the judge as follows:

"The fact that the gate was not closed on the last car and the guard was not on the platform [at the time of the accident] between the Sixty-Ninth and Seventy-Fourth street stations can be taken as negligence on the part of the defendant."

The court met one of the counsel and said that a communication had been received from the jury, and if both counsel were present and consented the communication would be opened and the jury returned; otherwise not. The other counsel, or his representative, and the clerk, were found, and with the judge entered the courtroom. In the absence of defendant's counsel, his assistant appeared, and a substitute stenographer was sent for. The judge stated that he had received a communication from the jury, and if both parties consented he would recall the jury; otherwise not. Plaintiff's counsel stated that he would like to see the communication first. Defendant's counsel made no objection, and apparently assented to the communication be-

ing opened. It was opened and handed to plaintiff's counsel. After reading it, he objected to the jury being instructed on the question submitted. Defendant's counsel read the communication, and then requested that the jury be brought into the courtroom and charged that they could not consider it negligence to operate trains with the gate open on that part of the road. The court said:

"The proceeding is entirely informal. I told you at the beginning that unless both sides consented we would not call the jury back."

Plaintiff's counsel again objected, and defendant's counsel again requested that the jury be brought back and instructed, which request was again refused. The next day, at the opening of the court, the jury were in the box and the following proceedings were had:

"Defendant's Counsel: Before that verdict is opened I would like to make a motion. I understand that yesterday afternoon some word was sent to the court by the jury."

The court then announced the proceedings above outlined.

"Defendant's Counsel: The same stenographer is not here to-day, and I do not know just what is on the record.

"The Court: He should not have taken anything on the record, I told counsel it was an informal matter out of court.

"Defendant's Counsel: I understand the jury wanted to know whether it could predicate negligence on the fact that the gate was left open. I ask your honor to resubmit that.

"The Court: I decline to so charge. That all took place out of court, and it was so stated to counsel. Your motion may be noted.

"Defendant's Counsel: The verdict has not yet been opened; and we ask that your honor charge the jury upon that question before any verdict is submitted. Of course, if they are permitted to find negligence from the fact that the gates on this train were open—

"The Court: No; the jury have separated. They have brought in their verdict. The communication was handed to the judge after the court had adjourned. The counsel were found. The facts were stated to them, and I told them that I was simply acting outside of court; that if they wanted the jury brought in, and this submitted to them, I would take it. They wanted to know what the communication was, and I stated it to them. The plaintiff's counsel refused, the defendant's counsel consented, and they were informed that unless they both agreed the matter would be treated as entirely out of court and no instructions would be given. Plaintiff's counsel still refused to consent and the court took no further action.

"Defendant's Counsel: I make a further motion, if your honor refuses to instruct the jury upon this question. We except upon the defendant's behalf, and I ask your honor to withdraw a juror on the ground that they have found one way or the other on this question of the opening of the gate, without proper instructions from the court.

"The Court: I decline. The jury have separated and have rendered their verdict.

"Defendant's Counsel: I except."

The question of the gate being open was not made an issue upon the trial. The complainant alleges that:

"On or about the 5th day of August, 1912, while the said train of cars, on which plaintiff was a passenger, was proceeding along and over New Utrecht avenue, more particularly at or about Seventy-First street, in the city of New York, Bath Beach, suddenly and without notice or warning to plaintiff, the said train of cars accelerated its speed with such an extraordinary jerk, that by reason of the said acceleration of speed and extraordinary jerk the plaintiff, as well as others, were thrown off their equilibrium, and the

plaintiff fell from one of the cars of the said train into the street at and about the aforementioned place, thereby causing plaintiff to sustain severe and painful injuries as hereinafter mentioned; that the said occurrence and injuries resulting therefrom to plaintiff were due wholly and solely to the negligence and carelessness of the defendant herein, its agents and servants in charge of the said train of cars, in suddenly accelerating the speed of the said train of cars with an extraordinary jerk and violence, so as to throw plaintiff and others off their equilibrium, owing to the negligent and incompetent management of the agents and servants of the defendant in charge of the said train of cars, because of the incompetent and negligent manner on the part of the motorman and engineer of said train of cars in not properly and skillfully running the said train of cars, and in general, in failing to exercise reasonable care, diligence, and prudence in the premises; and that the plaintiff herein was wholly free from any fault or negligence in the premises on his part in any wise contributing to said occurrence and injuries. Solely by reason of the defendant's negligence as aforesaid, plaintiff herein was severely and seriously injured," etc.

So that the negligence complained of was confined to the precise issue presented by the complaint of the unusual and extraordinary jerk and the incompetence and negligence on the part of the motorman and engineer. The court submitted that question as the sole negligence claimed as the ground for recovery. The inquiry submitted to the court by the jury indicated that they were considering an entirely different matter, namely, whether negligence could be predicated upon the fact that the gate was not closed and a guard was not on the platform; as pointed out, an issue not presented by the pleadings, not discussed by counsel, and not submitted by the court. Under such circumstances, the jury still being in charge of the court and no verdict having been received, it was within the power of the court to further charge them. In Phillips v. New York Central & Hudson River Railroad Co., 127 N. Y. 657, 27 N. E. 978, the court held that a trial judge may, the counsel for both parties being present, recall the jury and further charge them, or correct any supposed error in the charge as made, or in the refusals to charge. In Stevenson v. New York Contracting Co., 137 App. Div. 743, 122 N. Y. Supp. 726, upon the trial the defendant's liability was predicated entirely upon negligent performance of the master's duty to furnish safe tools and machines, to wit, an engine; the specific defect claimed being a defective brake. The learned court in its charge gave a correct abstract definition of the master's duty to provide for the use of the servant appliances which are reasonably sufficient and apt and suitable for the work the servant is to do. He also charged:

"But whoever does the duty which the law makes incumbent upon a master does it in the master's place and stead, and the master is responsible for the manner in which it is done, and that responsibility he cannot escape."

The court had also charged that all of the witnesses, except the doctor, were fellow servants. He also charged that if the injury to the plaintiff resulted from the negligent giving of the signal by the yardmaster, or the negligent starting by the engineer, then the plaintiff cannot recover. After the jury had retired to consider their verdict, they sent the following question to the court:

"The jury asks an opinion of the court: Is the company liable for an act causing the accident by a man employed by the company not acting in the

capacity which he is not authorized to do, and if his orders are a responsibility of company—that is, the yardmaster?"

Defendant requested that the jury be instructed as requested. The court said:

"I cannot answer that question. I will leave it to the jury on the instructions already given."

And an exception was taken. This court in a unanimous opinion said:

"The question was not well put, but it seems to us clear that the jury desired to be instructed whether the defendant was responsible for the result of Sweeny's orders. The court had specifically charged that Sweeny and the engineer were fellow servants with the plaintiff, and that if the train had been started by the negligent act of either of them plaintiff could not recover. But it had also charged: 'To whoever the master says "Do my duty," it does not make any difference whether you call him a scullion or a superintendent, in doing that duty he represents the master, and the master stands responsible for his acts.' It is evident that all the lay members of the jury were confused and desired enlightenment. Under the facts of the case the defendant was not responsible for Sweeny's acts or orders. He had nothing to do with the performance of the master's particular duty, to wit, the furnishing and keeping in good order a suitable engine, which the court had in mind when it made the charge quoted. The jury should have been recalled and instructed upon a precise subject they were so much in doubt about that they sent an inquiry to the court."

[3] It seems to me that, counsel for the defendant having learned from their communication to the court that the jury were considering a question which was not in issue, which had not been submitted to them, and which might have a controlling effect upon the verdict, was entitled to have the jury properly charged prior to the reception of any verdict, especially in a case of this character, where the question is exceedingly narrow whether evidence of a jerk or jolt sustains a finding of negligence or not. We cannot say that the defendant took no harm by the refusal, because from the question propounded by the jury it is quite possible that they did not consider the precise negligence submitted to them by the court, but went off on an entirely different proposition. We think, under the circumstances, this judgment ought not to be sustained, and that a new trial should be ordered.

Judgment and order appealed from reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.

INGRAHAM, P. J. (dissenting). I do not think that the evidence justified a finding that the defendant was negligent. I also think that the plaintiff, by walking out on the platform and standing by an open gate, assumed the risk of such an irregularity in the motion of the car as was disclosed in the testimony. The "jerk," while characterized by some of the plaintiff's witnesses as a sudden, violent jerk, does not seem to have been any different from that usual in the operation of a train of this kind. Upon approaching the station it is quite impossible to operate cars without more or less of a sudden stoppage or starting. There was nothing in the character of the "jerk" that

could cause an injury to the plaintiff if he had remained in a place of safety. If plaintiff had remained in the car until it drew up to the station, he would not have been injured. Without any invitation of the defendant's employés, plaintiff stationed himself in front of this open door. The situation was perfectly obvious, and either a sudden stopping or starting of the train would expose him to the danger of being thrown out, unless he maintained a strong hold on the car, and this was just what happened. It is not that standing on the car platform is contributory negligence as a matter of law, but the accident happened solely because of the plaintiff's placing himself in this position of danger, for which there was no necessity, and the danger of which he therefore assumed; and for an accident happening on account of such course I do not think the defendant is liable.

I therefore think the judgment should be reversed.

SCOTT, J., concurs.